UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**ROBERT W. BAILLARGEON**, and
**CYNTHIA M. BAILLARGEON**,

Debtors.

Case No. **08-60024-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 13th day of June, 2008.

In this chapter 13 bankruptcy case, after due notice, a hearing was held April 15, 2008, in Billings on confirmation of Debtors' Chapter 13 Plan filed January 21, 2008, together with the Trustee's objections thereto. Debtors appeared personally at the hearing and were represented by their counsel of record, Gary S. Deschenes of Great Falls, Montana. The chapter 13 trustee, Robert G. Drummond of Great Falls, Montana, also appeared at the hearing. In addition, debtor Cynthia M. Baillargeon's father, Randolph S. Green ("Randy") appeared at the hearing with his counsel, Craig Martinson of Billings, Montana. Debtor Cynthia M. Baillargeon ("Cyndi"), Randy and debtor Robert W. Baillargeon ("Robert") testified and the Trustee's Exhibits 1 through 4 were admitted into evidence without objection. Debtors and the Trustee have filed post-hearing briefs in support of their respective positions and confirmation of Debtors' Chapter 13 Plan is now ripe for decision. This Memorandum of Decision contains

the Court's findings of fact and conclusions of law. For the reasons set forth herein, the Court denies confirmation of Debtors' Chapter 13 Plan.

## FACTUAL BACKGROUND

The facts in this case are straight forward and are not in dispute. Randy and Cyndi both testified that Randy's mother--Cyndi's grandmother–deeded by a quit claim deed, the family home located at 609 6th Street, SE, Sidney ("Sidney home") to Randy as an estate planning tool. Cyndi is Randy's eldest child from a prior marriage. Randy explained that because Cyndi was in the middle of two families and because Randy and Cyndi have a good relationship, he decided, during a period of time when he thought that he had an incurable disease, to transfer the home to Cyndi and himself with the understanding that the home would go to Cyndi when Randy died, and that the home would never be sold. Consequently, in July of 1996, when Cyndi was approximately 17, Randy transferred, via quit claim deed, the Sidney home to Cyndi and himself.

Because Cyndi lived with her mom while growing up, Cyndi has never lived in the home. In addition, Cyndi has never paid any expenses associated with the home such as maintenance, insurance or property taxes. However, Randy has been living in the home since about 1992 and Randy's wife and younger children now reside in the home with Randy. Although the home has an approximate value of $57,000.00, Randy testified that he is in the process of putting a new roof and siding on the home and estimates that the home has a "quick sale" value of roughly $30,000.00.

Cyndi was not clear on when she learned that Randy had transferred the family home into Randy and Cyndi's name. Cyndi conceded that Randy may have told her of the transfer

2

"years ago," but her recollection was that Randy had told Cyndi of the transfer just recently. The Court concludes that Cyndi knew of the transfer years ago. Both Randy and Cyndi testified that the home was transferred to Randy and Cyndi with the understanding that the home would never be sold because Randy always wanted Cyndi and her half-siblings to have a home. The fact that both Randy and Cyndi understood that the home should never be sold, but would instead be kept for Cyndi and her siblings, necessarily implies that Cyndi knew that title to the Sidney home had been transferred to Randy and Cyndi's names at a date earlier than just recently.

According to Robert and Cyndi, because of poor money management and some "hard months," Cyndi and Robert started falling behind on their bills. Cyndi contacted Credit Solutions and was advised that Debtors should quit paying all their credit card bills and that if Debtors made payments to Credit Solutions, Credit Solutions would rescue Debtors from their financial dilemma. Debtors sent approximately six months of payments to Credit Solutions, but Credit Solutions paid nothing toward Debtors' mounting bills.

During a period of time that appears to coincide with the time when Debtors were sending payments to Credit Solutions, Household Credit Services sought and obtained a judgment against Robert and as a result of such judgment, had either started or were preparing to start garnishing Robert's wages. Cyndi testified that the garnishment and lack of help from Credit Solutions left Debtors with no option but to file for bankruptcy. Debtors first conferred with their bankruptcy attorney in late spring or early summer of 2007. Given Debtors' financial situation, Cyndi recognized that the Sidney home was at risk and thus prepared a quit claim deed transferring her interest in the Sidney home back to Randy. Cyndi explained that she

3

thought transferring her interest in the home back to her dad was the proper thing to do because the home did not belong to Cyndi. Moreover, Cyndi did want to do anything that would jeopardize Randy or his family. Cyndi sent the quit claim deed to Randy and directed him to record the deed. Randy recorded the quit claim deed on October 31, 2007.

Cyndi concedes that Debtors knew they were going to file bankruptcy when Cyndi prepared and sent the quit claim deed to Randy. The evidence indeed supports Cyndi's testimony. In particular, Debtors completed their credit counseling on October 22, 2007, nine days prior to the date that the quit claim deed was filed. Debtors also made a payment of $3,026.00 to their bankruptcy counsel on October 31, 2007, the same date that Randy filed the quit claim deed. Debtors thereafter filed their bankruptcy petition on January 11, 2008.

The Trustee objects to confirmation of Debtors' Chapter 13 Plan arguing that Debtors' Plan makes no provision for Dell Financial Services' secured claim; that Debtors failed to state what the minimum payment would be to unsecured creditors in paragraph 2(f) of their Plan; that Debtors' attorney's fees exceed the no-look fee appearing at Mont. LBR 2016 and thus, Debtors' counsel must first seek approval of his fees; that Debtors' income is above-median, and thus, Debtors must propose a 60-month plan, as opposed to a 36-month plan; that Debtors' Plan fails to meet the best interests of creditor test found at 11 U.S.C. § 1325(a)(4); and that Debtors' Plan has not been filed in good faith as required by 11 U.S.C. § 1325(a)(3). At the hearing, Debtors conceded that they failed to properly provide for Dell Financial Service's secured claim, that their plan will have to be changed from a 36-month plan to a 60-month plan and that Debtors' attorney will have to file and have approved a fee application if he expects to receive any fees above the no-look fee provided by Mont. LBR 2016. However, Debtors' argue

4

that their Chapter 13 Plan has been proposed in good faith and that it meets the best interests of creditors test. Moreover, Debtors maintain that Cyndi held the Sidney home in constructive trust for her family members and that Debtors would be unjustly enriched if they had to include one-half the home in their bankruptcy proceeding.

APPLICABLE LAW and DISCUSSION

It is well-established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added). *See also, Ho. V. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002) (under § 1325(a)(3), the debtor has the burden of proving good faith).

Debtors argue at the outset that the property at issue is the subject of a constructive trust and therefore, is not an issue that would prevent confirmation of Debtors' Chapter 13 plan. Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal *or* equitable interests of the debtor in property as of the commencement of the case.

In discussing the broad definition of "property of the estate", this Court wrote:

> Section 541(a)(1) of the Bankruptcy Code is intended to include in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140-41 (9th Cir. BAP 1995). In *Campbell* the BAP wrote:
>
> > The legislative history indicates that the scope of § 541(a)(1) is

5

> broad. *See United States v. Whiting Pools, Inc.*, 468 U.S. 198, 205 (1983). Section 541(a)(1) is intended to include in the estate any property made available to the estate by any other provisions of the Bankruptcy Code. *Id.* (*citing* H.R. Rep. No. 95-595, p. 367 (1977)). Several provisions in the Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. *See, e.g.,* 11 U.S.C. §§ 543, 544, 547 & 548; *Whiting Pools,* 462 U.S. at 205. Thus, "[a]n estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

*In re Weatherwax*, 16 Mont. B.R. 304, 308-09 (Bankr. D.Mont. 1997).

To determine Debtors' property interest in the Sidney home, the Court must examine state law because state law determines the extent of a party's interests in property and when such interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988). *See also Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992)").

MONT. CODE ANN. ("MCA") § 72-33-219 provides:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

As the Montana Supreme Court explained in *In re Marriage of Moss*, 293 Mont. 500, 506-508, 977 P.2d 322, 326 - 327 (Mont. 1999), MCA § 72-33-219,

> affected the law relating to constructive trusts by making constructive trusts dependent upon, and related to, the equitable principle of unjust enrichment. See *Lawrence v. Clepper* (1993), 263 Mont. 45, 53, 865 P.2d 1150, 1156. More to the point, § 72-33-219, MCA, by its plain language, does not require a party seeking to impose a constructive trust to prove that the party who holds title to the property obtained title by fraud or other wrongful acts. Rather, a person seeking to impose a constructive trust on property must only prove that the title holder would be unjustly enriched if they were permitted to retain title. Thus, as stated in the comments to the Restatement section from which § 72-33-219, MCA, was drawn:
>
>> A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong *or would be unjustly enriched if he were permitted to keep the property.*
>
> Restatement of the Law of Restitution, § 160, Comment *b* (1937) (emphasis added). *See also* George T. Bogert, Trusts § 77 at 287 (6th ed.1987)(stating "[w]henever equity finds that one has title to property, real or personal, originally acquired by any kind of wrongdoing *or, although innocently obtained, now held under such circumstances that retention of the title will result in unjust enrichment*, equity may declare such title-holder to be the trustee of a trust constructed by it for the purpose of working out justice, which is merely a convenient means of remedying a wrong.")(emphasis added).

Although this Court has not found any Montana case that would support Debtors' unjust enrichment claim, the RESTATEMENT OF RESTITUTION § 1 cmt. c, clarifies that:

> The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Thus, one who improves his own land ordinarily benefits his neighbors to some extent, and one who makes a gift or voluntarily pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution.

The foregoing comment defeats Debtors' constructive trust defense, particularly under the facts of this case where Randy transferred only one-half of the Sidney home to Cyndi. As noted earlier, Randy wanted to maintain the home for his children. The logical conclusion is that Randy deeded one-half of the property to Cyndi for that purpose and retained the other one-half for the children that Randy has with his current wife. Randy simply is not entitled to restitution

as a result of his gratuitous estate planning transfer to Cyndi and thus, no constructive trust was created.

Turning to the Trustee's enumerated objections to confirmation, the objection most discussed by the parties was the Trustee's good faith objection based upon 11 U.S.C. § 1325(a)(3), which reads:

> [T]he court shall confirm a plan if – . . . (3) the plan has been proposed in good faith and not by any means forbidden by law[.]

The determination of whether a debtor filed a petition or plan in bad faith is left to the sound discretion of the bankruptcy court. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1122-23 (9th Cir. 1999); *In re Marsh*, 36 F.3d 825, 828 (9th Cir.1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), *aff'd,* 120 F.3d 268 (9th Cir.1997).

In considering whether Debtors have pursued actions in this case that warrant denial of confirmation of their Chapter 13 Plan, the Court must review the "totality of the circumstances". *In re Leavitt*, 171 F.3d at 1124-25. *See also In re Nelson*, 343 B.R. 671 (9th Cir. BAP 2006) ("§ 1325(a)(3) 'good faith' . . ., under the law of the Ninth Circuit, is to be determined under the totality of the circumstances"). A finding of bad faith does not require fraudulent intent by the debtor. *Leavitt*, 171 F.3d at 1224; *Hungerford*, 19 Mont. B.R. at 130; *Gress*, 257 B.R. at 568.

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 petition plan was proposed in good faith, a bankruptcy court should consider: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether

egregious behavior is present. *See also Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002).

The Trustee glossed over *Leavitt* factors 1 and 2, which indicates to this Court that factors 1 and 2 weigh in Debtors' favor. Indeed, as to factor 2, this Court ran a search of Debtors' name in the Court's electronic case filing system and sees only the instant case filed under Debtors' name. The Trustee suggests, however, that Debtors' case was filed in an effort to "defeat creditors, [presumably Household Credit Services,] the bankruptcy Trustee and the bankruptcy Trustee's efforts to extend interest to the property in Sidney, Montana." The Court is not inclined to read factor 3 so broadly as to encompass litigation that has been concluded to a final judgment. If the Court were to interpret *Leavitt* factor 3 as suggested by the Trustee, any debtor who had a judgment against them could potentially be the target of a good faith objection. The Court thus finds that factor 3 does not weigh against Debtors.

As to *Leavitt* factor 4, the Trustee urges the Court to examine the "badges of fraud" set forth in Mont. Code Ann. § 31-2-333. The Trustee first discusses some of the enumerated badges of fraud and then argues:

> Other factors supporting the Trustee's allegations of bad faith exist here. The Debtors proposed a thirty-six-month plan in spite of the fact that, on Form 22C, they marked an "x" in the box stating that the applicable commitment period is five years. The plan is funded to pay a mere eight percent of the scheduled unsecured creditors. The Debtors did not amend the Plan to increase the funding prior to the confirmation hearing. Debtors' Schedule B makes no reference to the tax refunds owed to them but received post petition. Debtor Cynthia explained that the financial problems they encountered were largely due to their reliance on Credit Solutions of America - and its repayment plan - which the company represented would provide services to solve their financial problems. No mention of the Credit Solutions plan is referenced in the Statement of Financial Affairs. These factors all weigh against the Debtors' good faith.

9

The Court is not convinced that the above "other factors" weigh in the Trustee's favor. Debtors' counsel acknowledged at the confirmation hearing that Debtors' plan must be a 60-month plan and as noted by Debtors' in their post-hearing brief, Debtors had previously discussed the matter with the Trustee and it was agreed that, in an effort to save money, once all objections were resolved, Debtors would then file an amended plan. Debtors' also assert that they did not include their tax refunds in Schedule B because Debtors had not yet prepared their 2007 income tax returns as of the date Debtors filed their Schedules on January 21, 2008. In addition, Cyndi was very open about her dealings with Credit Solutions at the hearing. Debtors simply did not understand that they needed to disclose their dealings with Credit Solutions.

Based upon the record, the Court considers it too tenuous to say that these Debtors proposed their Chapter 13 plan in bad faith. Indeed, any finding of bad faith at this juncture would similarly taint any future plan proposed by Debtors. The Court, exercising its sound discretion, is not willing to terminate Debtors' chance at a fresh start at this juncture because of a tenuous good faith objection.

Notwithstanding the foregoing, the Court concludes that Debtors' proposed Chapter 13 plan does not meet the best interests of creditors test found at 11 U.S.C. § 1325(a)(4). The "best interest of creditors" test of 11 U.S.C. § 1325(a)(4) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

The Trustee has filed a complaint against Randy seeking to recover the Sidney home under 11 U.S.C. § 548(a)(1)(B). *See* Adversary Proceeding No. 08-00025. The Trustee has

requested two extensions of time for Randy to file an answer in the Adversary Proceeding because resolution of his pending objections to confirmation may moot the Adversary Proceeding. As a consequence, Randy has until June 19, 2008, to file an answer to the Trustee's fraudulent transfer claim. While the fraudulent transfer claim is not currently before the Court, the Trustee did present sufficient evidence at the confirmation hearing to suggest that his fraudulent transfer claim as to an undivided one-half interest conveyed by Cyndi to Randy has merit. As previously noted, Debtors have the burden of proving each and every element of 11 U.S.C. § 1325. Debtors did not demonstrate to this Court that the Trustee would fail with his § 548 claim. In order to avoid transfers pursuant to § 548(a)(1)(B), the Trustee must show (1) the debtor had an interest in the property transferred; (2) the debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer; (3) the transfer occurred within two years before the filing of the bankruptcy petition; and (4) the transfer was for less than reasonably equivalent value. *Samson v. U.S. West Communications, Inc.* (*In re Grigonis*), 16 Mont. B.R. 127, 133[1] (Bankr. D.Mont. 1997); *In re Sloan*, 16 Mont. B.R. 482, 484-85 (Bankr. D.Mont. 1998); *Hussey v. Haider, et al.*, 9 Mont. B.R. 351, 356, 126 B.R. 796 (1991); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556 (1994); *see also United Energy Corp.*, 944 F.2d at 594; *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d at 484.

      Cyndi admittedly had a one-half interest in the Sidney home from July of 1996 to October 31, 2007. The facts also show that Debtors were insolvent on or about October 31, 2007. In particular, Debtors agreed that they were experiencing financial difficulties and had already

---

[1]This case construes the predecessor statute, § 548(a)(2)(A).

11

contacted their bankruptcy attorney and were contemplating filing bankruptcy by October 31, 2007. Moreover, Cyndi conceded at the hearing that she transferred the property to Randy to protect the property from creditors and to keep the property out of the bankruptcy. The transfer was made within less than two and one-half months of Debtors' January 11, 2008, petition date and Cyndi transferred her one-half interest in the Sidney home to Randy for no consideration. The aforementioned facts suggest to this Court that the Trustee may have a meritorious claim against Randy and Debtors offered no evidence to the contrary.

If a Chapter 7 Trustee were to prevail in a similar action in a Chapter 7 case, one-half the Sidney home would become an asset of Debtors' bankruptcy estate, and would thus be available for Debtors' creditors. Under such a scenario, Debtors must formulate a Chapter 13 plan that provides for payments that equal or exceed at least one-half the value of the Sidney home. Thus, Debtors' proposed Chapter 13 Plan filed January 21, 2008, that contemplates a liquidation analysis of $1,801.00 does not satisfy the confirmation requirements of § 1325 and must be denied confirmation. The Court will thus enter a separate order providing as follows:

IT IS ORDERED that confirmation of Debtors' Chapter 13 Plan filed January 21, 2008, is DENIED; Debtors shall have file an amended Chapter 13 Plan on or before **July 3, 2008**, that is consistent with the Court's Memorandum of Decision; and a hearing on confirmation of Debtors' amended Chapter 13 plan shall be held **Tuesday, July 22, 2008, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

IT IS FURTHER ORDERED that if Debtors do not file an amended Chapter 13 plan on or before **July 3, 2008**, the Court will, without further notice or hearing, enter an order

12

converting this case to Chapter 7 of the Bankruptcy Code.

                BY THE COURT

                */s/ Ralph B. Kirscher*

                HON. RALPH B. KIRSCHER
                U.S. Bankruptcy Judge
                United States Bankruptcy Court
                District of Montana